UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BERNISE IRENE RAWSON,

        Plaintiff,

v.                                               Case No. 1:15-cv-973
                                                       Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
                                   /

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

Plaintiff alleged a disability onset date of June 27, 2010. PageID.224. Plaintiff's counsel subsequently amended the alleged onset date to "June [not the first], 2012 to conform to the proofs." PageID.41. Plaintiff identified her disabling conditions as arthritis on the spine which limits the time she can stand and sit, right hip problems, sciatic nerve problems, depression and anxiety. PageID.228. She had one year of college education, and previous employment as the lead hanger in a paint shop, a cashier, a waitress, and a fast food worker. PageID.229. The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on June 17, 2014. PageID.41-65. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity "at any time material to this

decision" and that she "meets the disability insured status requirements of the Act and Regulations at all times material to this decision." PageID.44.  At the second step, the ALJ found that plaintiff had severe impairments of "[the] lumbar spine for which she underwent spinal fusion surgery with residuals from it and her continuing impairments, and impairments of social functioning, concentration, persistence, or pace due to affective, anxiety, and substance addiction disorders." *Id.* At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  PageID.47.

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) to perform a range of light, unskilled work on a sustained basis as follows:

> I find the claimant has had the capacity to perform the exertional and nonexertional requirements of work except for that more physically demanding than light exertion; requiring understanding and remembering of detailed or complex instructions; requiring the carrying out of detailed or complex tasks; or requiring carrying out even simple tasks that require a fast pace or more than occasional contact with supervisors, coworkers, or members of the public.

PageID.49.  The ALJ also found that plaintiff was unable to perform any past relevant work. PageID.63.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light exertional jobs in the national economy.  PageID.64.  Specifically, the ALJ found that plaintiff could perform the following unskilled, light work in the region (defined as the State of Michigan): laundry aide (5,000 jobs); housekeeper (3,000 jobs); and mail clerk (1,500 jobs).  *Id.* Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, "at any time material to this decision."  *Id.*

### III. ANALYSIS

Plaintiff raised two issues on appeal.

### A. The ALJ committed reversible error by finding Plaintiff to be not fully credible without considering her inability to afford treatment.

Plaintiff claims that the ALJ erred in evaluating her credibility. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

Plaintiff contends that the ALJ rejected her subjective complaints without considering her ability to afford treatment contrary to SSR 96-7p,[1] which prevents an ALJ from drawing inferences about a claimant's failure to obtain medical treatment for alleged symptoms without first considering an explanation for that failure. SSR 96-7p provides in pertinent part:

> [T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner. The explanations provided by the individual may provide insight into the individual's credibility. For example: . . .
>
> > * The individual may be unable to afford treatment and may not have access to free or low-cost medical services. . . .

SSR 96-7p, 1996 WL 374186 at *7-8 (July 2, 1996).

Contrary to plaintiff's claim, the ALJ considered plaintiff's ability to afford medical treatment in evaluating her credibility:

> I have considered other factors concerning the claimant's alleged symptoms and functional limitations and restrictions (20 CFR 404.1529(c)(3)(vii)); primarily her access to appropriate evaluation and treatment.
>
> In July 2012, the claimant told an examiner (Allison Bush) that she did not have a PCP, and had not seen a doctor in over a year. She reported that she was not then-taking any prescription medication (Exhibit 8F). The claimant averred that, at the time of the hearing, her current PCP (Dr. Klanke) wanted her to see a psychiatrist,

---

[1] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1).

6

> and that was why she went to a new facility (cf Exhibit 14E). The record reflects that, even when she has had access to medical evaluation and treatment, she has not necessarily followed through with treatment recommendations. For example, her PCP recommended that she have Vitamin B 12 injections, but she never followed through with that recommendation (Exhibit 24F, p. 2).
>
> The claimant testified that her financial circumstances had limited her ability to obtain mental health treatment. For example, she noted that her husband did not obtain employee health insurance coverage until July 2013. Nevertheless, the claimant testified that she initiated mental health treatment in December 2012. (I note that the initial contact with a community based mental health clinic (at Community Mental Health Services of Muskegon County) was on January 7, 2013 (Exhibit 14F, p. 1). This is months after she alleged serious symptoms of suicidal and homicidal ideation. The claimant acknowledged that this provider did give her no-cost mental health treatment until funding ran out roughly 2 months before the hearing (see Exhibit18F, p. 4).
>
> However, she acknowledged that, now that her husband has employee health insurance, she had been treating since October 2013 at Life Counseling; having attended 3 counseling sessions by the time of the hearing. She also acknowledged that personnel at Community Mental Health Services of Muskegon County also had provided information to her as to where she could receive no-cost mental health treatment.
>
> She averred that one of her psychosocial stressors is her finances, e.g., being unable to pay the bill owed to a surgeon (Dr. Hamati) at Mercy Health Partners, Mercy Campus.
>
> The claimant has provided conflicting reports as to whether her condition has worsened over time. She also has provided conflicting statements concerning when she reportedly stopped smoking marijuana. If, as the claimant reported to clinicians in a therapeutic context that she believed that the use of this psychoactive substance was of benefit to her, particularly in the absence of any rehabilitation therapy (Exhibit 14F, p. 5), her reports that she actually stopped abusing this substance are of doubtful veracity.
>
> I do not credit the claimant's allegations concerning the frequency and duration of intense symptoms associated with her established impairments (20 CFR 404.1529 and SSRs 96-4p and 96-7p).

PageID.58-59. In addition, the record reflects that the ALJ addressed plaintiff's access to health care at the administrative hearing. In this regard, when the ALJ asked plaintiff how she paid for mental

7

health treatment, plaintiff responded that Community Mental Health offered free services until her husband obtained insurance and that now she goes to a different facility paid for by that insurance. PageID.100-101.  Based on this record, the ALJ considered plaintiff's ability to afford medical treatment consistent with SSR 96-7p.  Accordingly, plaintiff's claim of error will be denied.

>    **B.   The ALJ committed reversible error by failing to correctly weigh the evidence.**

Plaintiff contends that the ALJ failed to properly evaluate her RFC, which was determined by "a battle of the consulting physicians." Plaintiff's Brief (docket no. 13, PageID.557).[2] The regulations provide that the agency will evaluate every medical opinion received "[r]egardless of its source," and that unless a treating source's opinion is given controlling weight, the agency will consider the factors set forth in § 404.1527(c)(1)-(6) in deciding the weight given to any medical opinion.  *See* 20 C.F.R. § 404.1527(c).  While the ALJ is required to give "good reasons" for the weight assigned a treating source's opinion, *see Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004), this articulation requirement does not apply when an ALJ rejects the report of a non-treating medical source, *see Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir.2007).  However, "the ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning." *Stacey v. Commissioner of Social Security*, 451 Fed. Appx. 517, 519 (6th Cir. 2011) (internal quotation marks omitted).

The thrust of plaintiff's claim is that the ALJ improperly evaluated the opinions of consultants psychologist Dr. Mulder, and orthopedist Dr. Montes.  At the outset of his review, the

---

[2] While plaintiff refers to the findings of a treating psychiatrist, Dr. Jawor, she apparently concedes that the doctor did not offer any opinions subject to the treating physician rule.  *See* Plaintiff's Brief at PageID.557-558. The Court notes that the ALJ addressed the treatment notes related to plaintiff's medication management appointment with Dr. Jawor in January 2013.  PageID.55.

ALJ states that he is giving these examining consultants less weight than the agency's non-examining consultants:

> Usually, the opinions of examining clinicians may be given more evidentiary weight than the opinions of non-examining and non-treating reviewers (20 CFR 404.1527(c)(1)). In this matter, in addition to the forensic examination by, apparently, an internist (Dr. Krieger) in July 2012 (Exhibit 9F), the claimant underwent forensic examinations in October 2013 (Exhibits 20F; 22F) by a psychologist (Dr. Mulder) and an orthopedist (Dr. Montes). Both of these clinicians have served as consulting, forensic examiners to the DDS, and each provided an opinion concerning the claimant's functioning (Exhibits 21F; 23F). There is also an opinion from an examining nonmedical source in a forensic context (Exhibit 8F). The role of an examiner, however, does *not* confer upon them the specialized knowledge of reviewers (20 CFR 404.1527(c)(6)).

PageID.60 (emphasis in original).

It appears that the ALJ did not consider Drs. Mulder and Montes' past experience as examiners for the DDS as evidence that they possessed knowledge of the disability review process equal to that of the non-examining agency reviewers. In support of his position, the ALJ cites portions of 20 C.F.R. § 404.1527, which regulates the evaluation of opinion evidence. The first cited section, 20 C.F.R. § 404.1527(c)(1) ("Examining relationship"), provides that "Generally, we will give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." The second cited section, 20 C.F.R. § 404.1527(c)(6) ("Other factors") provides that:

> When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

The ALJ relied on § 404.1527(c)(6) to bolster the opinions of the agency reviewers, stating "As previously noted, medical consultants to the Administration - as opposed to non-examining or non-treating medical consultants who may review and comment upon medical evidence -- are recognized to have specialized knowledge concerning the disability program and its evidentiary requirements (20 CFR 404.1527(c)(6))." PageID.59.

The regulations acknowledge that agency consultants are experts in Social Security disability evaluation, as set forth in 20 C.F.R.§ 404.1527(e)(2)(i), which states:

> Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists. *State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation.* Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence, except for the ultimate determination about whether you are disabled (see § 404.1512(b)(8)).

20 C.F.R. § 404.1527(e)(2)(i) (emphasis added).

Here, it appears that even though the ALJ found that Dr. Mulder and Dr. Montes were former agency examiners considered to be experts in Social Security disability evaluation while working for the agency, they somehow lost this expertise when they offered opinions on behalf of the claimant, i.e., they no longer had an "understanding of our disability programs and their evidentiary requirements" equal to that of the agency reviewers in this case. 20 C.F.R. § 404.1527(c)(6). In this regard, the ALJ adopted the opinion of two non-examining experts who testified at the hearing, Dr. Solodky (PageID.74-90) and Dr. O'Brien, (PageID.90-99) in part because they had "specialized knowledge of the disability program" under 20 C.F.R. § 404.1527(c)(6). Based on this record, the Court cannot trace the path of the ALJ's reasoning which resulted in his

decision to discount the opinions of examining consultants Dr. Mulder and Dr. Montes in favor of the opinions of the non-examining agency reviewers Dr. O'Brien and Dr. Solodky. *Stacey*, 451 Fed. Appx. at 519.  Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a re-evaluation of the opinions of Dr. Mulder and Dr. Montes.

### IV.  CONCLUSION

For the reasons discussed, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner is directed to re-evaluate the opinions of Dr. Mulder and Dr. Montes.  A judgment consistent with this opinion will be issued forthwith.


Dated:  September 27, 2016              /s/ Ray Kent
                                        RAY KENT
                                        United States Magistrate Judge